**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| **MARK A. CRICHLOW,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. 19-cv-10449-DJC** |
| ) | |
| **STEVEN SILVA,** ) | |
| ) | |
| **Respondent.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                    **November 3, 2021**

## I.      Introduction

Petitioner Mark A. Crichlow ("Crichlow"), acting *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  D. 1.  Respondent Steven Silva ("Silva"), the Superintendent of MCI-Norfolk, opposes the Petition on the basis that Crichlow's grounds for habeas relief fail on the merits, are unexhausted and/or are procedurally defaulted.  D. 23.  For the reasons discussed below, the Court DENIES the Petition.

## II.     Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts may review petitions for habeas petitions that have resulted in either a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  As an initial matter, a petitioner must show that he has exhausted all of his state court remedies or, in the alternative, that the State did not offer

1

appropriate corrective measures.  Id.  To carry the burden of proving exhaustion, a petitioner must demonstrate that he has "fairly and recognizably" presented his claim to the state's highest court, the Supreme Judicial Court ("SJC") in this case.  Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000); Adelson v. DiPaola, 131 F.3d 259, 263 (1st Cir. 1997).

For the purposes of § 2254(d)(1), federal law is defined as Supreme Court holdings and excludes dicta.  White v. Woodall, 572 U.S. 415, 419 (2014).  "[A]n unreasonable application of federal law" is not the same as "an incorrect application of federal law."  Scott v. Gelb, 810 F.3d 94, 101 (1st Cir. 2016) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)).  Not even clear error will establish an objectively unreasonable conclusion.  White, 572 U.S. at 419.  Habeas relief is not warranted if "'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

For the purposes of § 2254(d)(2), any factual determinations made by a state court are "presumed to be correct" unless rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### III.     Relevant Factual and Procedural Background

Unless otherwise noted, this factual background is drawn from the Massachusetts Appeals Court's decision affirming Crichlow's conviction.  <u>Commonwealth v. Crichlow</u>, 94 Mass. App. Ct. 1104, 2018 WL 4840481, at *1 (Mass. App. Ct. Oct. 5. 2018).[1]

The charges against Crichlow arose out of events that occurred in late September 2013.  <u>Id.</u> at *1.  Crichlow had been released from prison a few days earlier and was staying with relatives. S.A. 783.  The victim, Crichlow's fourteen-year-old niece, reported that Crichlow raped her. <u>Crichlow</u>, 2018 WL 4840481, at *1.

A few days later, the victim reported the incident and went to a local hospital to be examined.  <u>Id.</u>  The victim did not want to undress in front of the Sexual Assault Nurse Examiner ("SANE") and would not allow the examiner to perform a vaginal swab.  <u>Id.</u>  The SANE nurse instructed the victim how to take the swab.  <u>Id.</u>  While the nurse was unable to confirm that the victim followed the instructions, the victim testified at trial that she used the swab in accordance with the nurse's directions.  <u>Id.</u>

### A.     <u>Investigation and Charge</u>

The contents of the SANE kit, including the vaginal swab, were sent to the state laboratory, where forensic scientist Kelley King ("King") extracted sperm cells from the sample on the swab. <u>Crichlow</u>, 2018 WL 4840481, at *1; S.A. 679, 685.  Maureen McCabe ("McCabe"), an analyst who did not testify at trial, created the DNA profile of the sample on the vaginal swab.  <u>Crichlow</u>, 2018 WL 4840481, at *1; S.A. 718.

---

[1] On May 16, 2019, Silva filed with the Court a Supplemental Answer containing relevant documents from the state court proceedings.  D. 14.  The Court cites to the documents contained in the Supplemental Answer as "S.A. [page number]."

On February 4, 2015, Springfield Police Detective Keith Pouliot ("Pouliot") took a buccal sample from the Petitioner. Crichlow, 2018 WL 4840481, at *1; S.A. 603. Pouliot did not testify as to what he did with Crichlow's sample but did testify to the police department's buccal swabbing procedure at trial: "[w]e basically swab the inside of the cheeks on the inside of the mouth, the right-side cheek, the left-side cheek and also underneath the tongue, put it on a sample card, seal[] [it] and sen[d] [it] to the lab." Crichlow, 2018 WL 4840481, at *1.

The buccal swab that was submitted to the lab had an evidence submission form that identified Crichlow as the source of the swab. Id. at *1 n.5. Another analyst, Lindsay Bird ("Bird"), who also did not testify at trial, created the DNA profile of the sample on the buccal swab. Crichlow, 2018 WL 4840481, at *1; S.A. 714, 718.

Kira Snyder ("Snyder"), a forensic scientist for the State lab, compared the DNA profiles of the samples from the vaginal and buccal swabs; she testified to her conclusion that there likely was a match between the DNA profiles. Crichlow, 2018 WL 4840481, at *1 & n.7.

### B.    Relevant State Court Proceedings

Crichlow's trial began in Hampden Superior Court on February 1, 2017. S.A. 4. On February 7, 2017, the jury found Crichlow guilty of aggravated rape of a child in violation of Mass. Gen. L. c. 265, § 23A. S.A. 10. On February 16, 2017, the trial court sentenced Crichlow to state prison for twelve to fifteen years. S.A. 11.

Crichlow appealed his conviction to the Massachusetts Appeals Court, asserting that Snyder's testimony violated his Confrontation Clause rights, the admission of the evidence submission form violated his Confrontation Clause rights, the court abused its discretion by admitting the unauthenticated evidence submission form, the testimony about the DNA testing was unreliable, and the court abused its discretion by seating four jurors who allegedly did not

understand or follow the judge's instructions about his presumption of innocence.  S.A. 13, 16-17.

On October 5, 2018, the Appeals Court affirmed his conviction.  <u>Crichlow</u>, 2018 WL 4840481, at

*4.  Crichlow appealed to the Supreme Judicial Court ("SJC"), which denied further review on

November 30, 2018.  <u>Commonwealth v. Crichlow</u>, 481 Mass. 1101 (2018).

        **C.**    <u>**This Petition**</u>

In the Petition, Crichlow asserts the following grounds:  (1) that Snyder's trial testimony violated Crichlow's Sixth Amendment Confrontation Clause rights because "she testified to the match between profiles created by two different nontestifying analysts" ("Ground I"); (2) the admission of the evidence submission form violated Crichlow's Sixth and Fourteenth Amendment rights ("Ground II"); (3) "allow[ing] testimony of DNA testing" violated Crichlow's Fourteenth Amendment due process rights because "problems existed with the chain of custody of the DNA samples" ("Ground III"); and (4) the trial judge's failure to dismiss jurors for their failure to acknowledge Crichlow's presumption of innocence violated his "Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article 12 and 15" ("Ground IV").  D. 1 at 5, 7, 8, 10.

**IV.**    **Discussion**

        **A.**    <u>**Confrontation Clause (Ground I)**</u>

Crichlow asserts that his Sixth Amendment right under the Confrontation Clause was violated when only Snyder testified to the match between DNA profiles created by two different analysts, but those analysts who created the profiles did not testify about their work, and that Snyder could not have been meaningfully cross-examined about the methods and procedures the non-testifying analysts used to generate the profiles.  D. 20 at 13, 17.  Accordingly, Crichlow

argues that the Appeals Court's decision "involved an unreasonable application of clearly established federal law" and "was an unreasonable determination" of the facts.  D. 20 at 18.[2]

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  Crawford v. Washington, 541 U.S. 36, 42 (2004) (quoting U.S. Const. amend. VI) (internal quotations omitted).  Testimonial statements from witnesses who do not testify at trial can only be admitted when (1) "the declarant is unavailable," and (2) the "defendant has had a prior opportunity to cross-examine" the declarant.  Id. at 59.  As relevant here, defendants have a right to confront analysts who prepare certificates of analysis that will be used as evidence against them.  See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 307 (2009); Bullcoming v. New Mexico, 567 U.S. 647, 651 (2011).  For example, certificates of analysis that identified a substance as cocaine were testimonial statements, thus, the analysts were "witnesses" under the Crawford standard.  Melendez-Diaz, 557 U.S. at 308, 311.  While defendants are entitled to confront the analysts who created certificates of analysis that function "[as] affidavits . . . it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case."  Id. at 311 n.1.  Likewise, prosecutors cannot admit a testimonial forensic laboratory report in evidence through the live testimony "of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification."  Bullcoming, 567 U.S. at 657, 662 (concluding that testimony of analyst at trial who replaced original analyst that generated a

---

[2] Crichlow also argues in Ground I that Snyder "improperly included testimonial hearsay relating to chain of custody on direct examination, and she also could not be meaningfully cross-examined about it."  D. 1 at 5.  This argument is discussed in Ground III below.

blood-alcohol report violated the Confrontation Clause because the replacement analyst did not testify to "any 'independent opinion'" regarding the defendant's blood alcohol levels).

An expert witness, however, can relay her independent opinion about underlying testimonial reports that were not admitted into evidence when "based on facts that the expert assumes, but does not know, to be true" since the criminal defendant is permitted to cross-examine the expert about her statements.  Williams v. Illinois, 567 U.S. 50, 57 (2012) (concluding the expert's testimony that the DNA profile generated by an external lab matched the profile created by police lab was not a Confrontation Clause violation).  In Williams, "the expert made no other statement that was offered for the purpose of identifying the sample of biological material used in deriving the profile[,] for the purpose of establishing how [the lab] handled or tested the sample," or to "vouch for the accuracy of the profile that [the lab] produced."  Id. at 56-57.  Moreover, the report itself was "very different from the sort of extrajudicial statements, such as affidavits, depositions, prior testimony, and confessions" that are precluded by the Confrontation Clause because the report "was not inherently inculpatory."  Id. at 58.

As the Appeals Court explained in its analysis, Snyder testified on direct examination to the comparison between the DNA profiles between the buccal and vaginal swabs and that there was a statistical match between Crichlow's DNA profile and the DNA profile found on the vaginal swab.  Crichlow, 2018 WL 4840481, at *2.  Snyder, however, did not make any statements about the other analysts' work on extracting the samples from the swabs, generating the DNA profiles, or the quality of the analysts' work.  Id.  The Appeals Court concluded that "[n]either the Sixth Amendment nor art. 12 precludes 'an expert's independent opinion testimony, even if based on facts or data not in evidence and prepared by a nontestifying analyst.'"  Id. (citing Commonwealth v. Greineder, 464 Mass. 580, 592 (2012)); Commonwealth v. Jones, 472 Mass. 707, 712 (2015)

(noting that Massachusetts and Sixth Amendment confrontation rights are coextensive).  Thus, the admission of expert testimony based upon a scientific DNA report generated by another analyst does not infringe upon a criminal defendant's right to confrontation.  Id.  Moreover, Crichlow had an opportunity to cross examine Snyder.  As the Appeals Court explained, Crichlow "was free to cross-examine Snyder on all of these topics.  He also had the opportunity to cross-examine Snyder about the fact that she accepted, without independent review, knowledge, or verification, the profiles generated by the nontestifying analysts."  Crichlow, 2018 WL 4840481, at *2; S.A. 722-24, 742-44.  Although Crichlow's counsel did not pursue questioning that targeted these assumptions during cross-examination, Crichlow still had a full and fair opportunity to cross-examine Snyder about these assumptions should his counsel have chosen to "explore these avenues on cross-examination."  Id.

The Appeals Court's consideration of the Confrontation Clause issue was neither contrary to, nor an unreasonable application of, clearly established federal law.  The Appeals Court relied upon the SJC's decision in Commonwealth v. Greineder, 464 Mass. 580 (2013), which held that in the wake of Williams v. Illinois, "[f]orensic expert opinion testimony, even if based on independently admissible facts or data not in evidence, does not violate a criminal defendant's confrontation rights."  Greineder, 464 Mass. at 594-95.  Accordingly, the Appeals Court did not apply "a rule that contradicts the governing law" in Supreme Court cases.  Dagley v. Russo, 540 F.3d 8, 13 (1st Cir. 2008).  Nor did the Appeals Court's decision involve an unreasonable application of Supreme Court confrontation precedent.  "To meet this standard, a petitioner must establish that the state court decision identifies the correct governing legal principle, but applies it in an objectively unreasonable manner to the facts of the case."  Id. at 18 (citing Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003)).  Here, Snyder only testified to her "independent opinion"

8

that "the defendant could not be excluded as a possible contributor" in the comparison between Crichlow's DNA profile extracted from his buccal swab and the DNA profile extracted from the victim's vaginal swab, which does not rule afoul of the Confrontation Clause. Crichlow, 2018 WL 4840481, at *2; see Barbosa v. Mitchell, 812 F.3d 62, 67 (1st Cir. 2016); Bullcoming, 567 U.S. at 662; S.A. 737-42.

Accordingly, the Appeals Court's decision is neither contrary to, nor an unreasonable application, of clearly established federal law, and this ground in the Petition fails.[3]

### B.    Admission of Evidence Submission Form (Ground II)

In Ground II, Crichlow asserts that the admission of the evidence submission form that Pouliot completed for the buccal swab was in violation of his confrontation rights "because it included testimonial statements made by a non-testifying witness." D. 1 at 7. At trial, Pouliot testified about performing the buccal swab on Crichlow and the department's general swabbing procedures while Snyder established that the evidence submission form, a document that indicates that the buccal swab had been received by the lab, had Crichlow's name and date of birth in addition to case-identifying numbers. Crichlow, 2018 WL 4840481, at *3; S.A. 603, 739-40. Silva counters that Crichlow's claim is unexhausted and procedurally defaulted because the claim was not presented to the SJC for further review and Crichlow acknowledged that he did not object at trial to the form's admission. On the merits, Silva contends that the admission of the form did not rise to the level of prejudicial error.

---

[3] To the extent Crichlow also argues that the lack of testimony from the two non-testifying analysts violated his Sixth Amendment rights under the Confrontation Clause, that argument also fails. Every analyst who would be relevant in establishing the "authenticity of the [DNA] sample[] or accuracy of the testing device" need not testify in person, or at all. Melendez-Diaz, 557 U.S. at 311 n.1.

### 1.    Exhaustion

Silva contends the Ground II claim is unexhausted because Crichlow did not present this claim in his ALOFAR to the SJC.  D. 23 at 17; S.A. 303-06.  "[A] habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim. . . . The petitioner's ALOFAR is the 'decisive pleading' and the federal claim must be presented to the state's highest court within the four corners of the ALOFAR."  Fusi v. O'Brien, 621 F.3d 1, 6 (1st Cir. 2010) (quotation omitted).

Here, Crichlow references Ground II (albeit within his first claim) in the ALOFAR, stating "[t]he only other chain of custody evidence for the swab was the 'evidence submission form' . . . which the Appeals Court determined, at pages 8-9, was admitted in error." S.A. 308.  Accordingly, because the basis for Crichlow's Ground II claim regarding the admission of the evidence submission form in violation of his confrontation rights was presented to the SJC in the ALOFAR, Ground II is exhausted.

### 2.    Procedural Default

Silva contends that Ground II is procedurally defaulted because Crichlow "failed to raise a contemporaneous objection on confrontation grounds at trial" and "the Appeals Court deemed the claim waived."  D. 23 at 19.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred . . . ."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  The Massachusetts contemporaneous objection rule, which requires a party to make their objection known at the time of the ruling, Mass. R. Crim. P. 22, is an independent and adequate state procedural rule barring federal habeas review.  See Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010).  "The [Supreme Judicial Court]

regularly enforces the rule that a claim not raised is waived." <u>Gunter v. Maloney</u>, 291 F.3d 74, 79 (1st Cir. 2002); <u>see</u> <u>Janosky</u>, 594 F.3d at 44 (stating that "[w]e have held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts").

With respect to the admission of the evidence submission form, Crichlow acknowledged to the Appeals Court that he did not raise a contemporaneous objection. S.A. 47. Accordingly, Crichlow has procedurally defaulted this claim and did not preserve them for his habeas petition. <u>See</u> <u>Rodriguez v. Russo</u>, 495 F. Supp. 2d 158, 169-70 (D. Mass. 2007). A procedural default may be excused, however, if the "petitioner can demonstrate cause for the default and actual prejudice." <u>Janosky</u>, 594 F.3d at 44. "The general requirement for cause for a procedural default is that the prisoner must show 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" <u>Gunter</u>, 291 F.3d at 81 (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)). A petitioner can also excuse the default if he can show there was a "fundamental miscarriage of justice." <u>Id.</u> Crichlow makes no showing as to cause or prejudice and the Court does not find that either exception is applicable here. <u>See</u> D. 20 at 21-33. As the Appeals Court explained, "although the evidence submission form was the only direct evidence establishing the chain of custody of the buccal swab, there was circumstantial evidence that supported the same conclusion" with witness testimony providing "further link[s] . . . to supply the missing link in the chain of custody of the buccal swab" that essentially replaced the need for the evidence submission form. <u>Crichlow</u>, 2018 WL 4840481, at *3. Therefore, there was no fundamental miscarriage of justice.

Accordingly, Ground II is procedurally defaulted.

3.    *Merits*

Ground II also fails because the admission of the evidence submission form did not rise to the level of prejudicial error required by § 2254.

Confrontation clause violations, like other constitutional trial errors, are subject to harmless-error analysis. Santos v. Alves, No. 10-cv-11184-FDS, 2020 WL 5596099, at *15 (D. Mass. Sept. 18, 2020) (citing Harrington v. California, 395 U.S. 250, 254 (1969)).  On habeas review of a state appellate court's harmless-error analysis, federal courts "use an 'actual prejudice' standard," which requires a habeas petitioner to show that the error "had substantial and injurious effect or influence in determining the jury's verdict."  Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)); Connolly v. Roden, 752 F.3d 505, 511 (1st Cir. 2014).

Here, the admission of the evidence submission form did not have a "substantial and injurious effect or influence in determining the jury's verdict" because of the cumulative nature of the other evidence.  See Brecht, 507 U.S. at 637; Crichlow, 2018 WL 4840481, at *3.  First, the jury had the ability to determine, in its discretion, whether the evidence was sufficient to show that Pouliot sent Crichlow's buccal swab to the lab given Pouliot's testimony about swabbing and lab delivery procedures, and his identification of Crichlow's birthdate which was the same birthdate that Snyder testified was on the evidence submission form. Crichlow, 2018 WL 4840481, at *3. Second, the jury had before them other pieces of circumstantial evidence upon which they could rely to form an independent basis for Crichlow taking the swab, the lab receiving it, analyzing it, and tying it back to him (i.e., the victim's testimony, the SANE nurse's testimony, the lab personnel's testimony, the presence of sperm on the vaginal swab and the DNA profile match between the two swabs). Id.

C.      **Chain of Custody for DNA Evidence (Ground III)**

In Ground III, Crichlow asserts that there was a Fourteenth Amendment due process violation when "the trial judge allowed testimony of DNA testing" because "problems existed with the chain of custody of the DNA samples." D. 1 at 8. Silva contends that this claim is unexhausted and procedurally defaulted. D. 23 at 15-16, 21. Moreover, Silva counters that this claim fails on the merits because "any weaknesses in the chain of custody went to the weight of the evidence, not its admissibility." Id. at 26.

1.     *Exhaustion*

Silva argues that Crichlow's Ground III claim is unexhausted, and therefore, should be dismissed because Crichlow "did not fairly present [the claim] as a Fourteenth Amendment Claim." D. 23 at 19.

A petitioner must fairly present their federal claim in state court before requesting the habeas court to review it. See Duncan v. Henry, 513 U.S. 364, 365 (1995); Clements v. Maloney, 485 F.3d 158, 162 (2007). A petitioner can satisfy the fair presentation prerequisite in several ways, including "reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim." Coningford v. Rhode Island, 640 F.3d 478, 482–83 (1st Cir. 2011).

Here, Crichlow asserts in the Petition that the admission of DNA evidence violated his Fourteenth Amendment due process rights because "problems existed with the chain of custody of the DNA samples [which] rendered [their admission] inconclusive and hence [sic] unduly prejudicial." D. 1 at 8. Such claim is not fairly presented because at no point in his briefs to the

state courts did Crichlow reference it in any of the means identified.  See Coningford, 640 F.3d at 482; Clements, 485 F.3d at 162; S.A. 52, 306.  Crichlow's characterization of the DNA evidence as "unduly prejudicial" speaks to evidentiary rules, not due process.  See S.A. 52, 306.  This is insufficient to establish the fair presentation prerequisite.  Coningford, 640 F.3d at 482 (concluding petitioner did not fairly present the due process claim by relying upon state evidentiary rules, "accompanied by generalized complaints about prejudice"); Clements, 485 F.3d at 162.  Thus, Ground III is unexhausted.

### 2.    Procedural Default

Additionally, Ground III is procedurally defaulted.  In the brief Crichlow submitted to the Appeals Court, Crichlow acknowledges that the claim was "only raised in motion in limine" and thus, "the error [was] reviewed under the miscarriage of justice standard."  S.A. 57.  The Appeals Court dismissed this claim as an "unpreserved argument."  Crichlow, 2018 WL 4840481, at *4. For the same reasons stated in Ground II, including Crichlow's failure to show cause or prejudice, Crichlow's failure to contemporaneously object to the evidence admission precludes habeas relief as to Ground III.

### 3.    Merits

Even assuming Ground III was properly raised in the Petition, it also fails because breaks in the chain of custody concern the weight of the evidence, not its admissibility.  See United States v. Anderson, 452 F.3d 66, 80 (1st Cir. 2006); Melendez-Diaz, 557 U.S. at 311 n.1 (explaining that "[i]t is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence") (quotation omitted).  Crichlow acknowledges that "chain of custody violations go to the 'weight' of the evidence for the jury's sake" but asks the Court to "acknowledge" the gaps in the chain of custody for the DNA samples.  D. 20 at 34-35.  Such claims are not cognizable for

habeas review.  See Cavazos v. Smith, 565 U.S. 1, 4 (2011) (citing Jackson v. Virginia, 443 U.S. 307 (1979)).

### D.     Jury Empanelment (Ground IV)

In Ground IV, Crichlow asserts that the trial judge failed to dismiss four jurors (Jurors 8, 9, 25 and 68) for not understanding the presumption of innocence, which in turn violated his Sixth Amendment and due process rights.  D. 20 at 36.  During voir dire, each of these four jurors answered that they expected Crichlow to testify or "prove" his innocence by presenting some evidence.  S.A. 427, 435, 450, 500-01.  Before defense counsel could exercise a challenge, the judge explained to each of these jurors that he would instruct the jury that "the defendant ha[d] no obligation whatsoever to testify or [] present any witnesses or any evidence," and asked whether each understood and could follow the instruction.  S.A. 428; see S.A. 435-36, 450-51, 501.  After each juror answered affirmatively, defense counsel challenged jurors 8, 9 and 25 for cause.  S.A. 433, 438, 451.  The judge denied the challenges, and defense counsel said she was "satisfied" as to the three jurors without exercising peremptory challenges.  S.A. 433, 438, 451.  For juror 68, defense counsel said she was "satisfied" without exercising any challenge.  S.A. 502.  Silva contends that this claim is unpreserved, and thus, procedurally defaulted.  D. 23 at 24. Additionally, Silva contends that Crichlow did not provide "clear and convincing" evidence that would deem the trial judge's factual determinations about the jurors unreasonable under § 2254(d)(2) and § 2254(e)(1) so the factual determinations should not be overturned.

#### 1.     Exhaustion

Crichlow failed to exhaust Ground IV.  Crichlow's ALOFAR for SJC review only discussed Confrontation Clause issues and chain of custody issues, neither of which encapsulates the jury empanelment claim.  See S.A. 299-315.  Since the jury empanelment issue "appeared in

the Appeals Court's decision but was omitted from the ALOFAR[,]" Ground IV was not submitted to the state's highest court for consideration, and thus, is unexhausted.  Josselyn v. Dennehy, 475 F.3d 1, 3 (1st Cir. 2007).

### 2.   Procedural Default

Ground IV was also procedurally defaulted.  During voir dire, Crichlow's defense counsel challenged Jurors 8, 9 and 25 for cause but failed to exercise a peremptory challenge once the judge did not dismiss those jurors upon further questioning.  S.A. 433, 437-8, 451.  Crichlow's defense counsel did not challenge Juror 68 at all.  S.A. 502.  As the Appeals Court explained, "[t]he issue is unpreserved either because the defendant failed to challenge the particular jurors for cause, or failed to exercise one of his peremptory challenges, or both."  Crichlow, 2018 WL 4840481, at *4 (citing Commonwealth v. Clark, 446 Mass. 620, 629 (2006) (explaining that defendant's objection to judge's refusal to excuse juror for cause is preserved for review when a defendant uses a peremptory challenge and "is later 'forced to accept a juror whom he otherwise would have challenged peremptorily'")); see Commonwealth v. McCoy, 456 Mass. 838, 842 (2010) (noting that "[w]here a defendant fails to challenge a juror for cause, the questions of the impartiality of that juror and the adequacy of voir dire are waived").

For the same reasons stated in Ground II, including Crichlow's failure to show cause or prejudice, Crichlow's failure to preserve his objections to these jurors precludes habeas relief as to Ground IV.

### 3.   Merits

"Voir dire examination serves to protect [due process] right[s] by exposing possible biases, both known and unknown, on the part of potential jurors.  Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to

warrant challenge for cause may assist parties in exercising their peremptory challenges." McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984); see Morgan v. Illinois, 504 U.S. 719, 727 (1992) (explaining that due process demands an impartial jury).

Ground IV, that Crichlow's due process rights were violated by the trial judge's refusal to excuse jurors who did not understand or abide by the presumption of innocence, fails because (1) the state court used its discretion to determine the factual issue of juror bias and (2) Crichlow does not challenge the state court's factual determination with clear and convincing evidence.  See Darden v. Wainwright, 477 U.S. 168, 175 (1986) (noting that trial judge's determination of juror bias is a factual finding entitled to presumption of correctness).  Here, Crichlow states only that "where there were four jurors who did not understand the presumption of innocence, or who were unwilling to accede to being impartial, there can be no harmless error."  D. 20 at 37.  Furthermore, Crichlow only offers conclusory allegations that "Jurors 8, 9, 25, and 68 were all seated jurors who did not understand the Court's instructions or were not willing to follow them."  Id. at 36.  This assertion, however, overlooks the fact that the trial judge instructed each respective juror during individual questioning based on the juror's preliminary answers that Crichlow had no obligation to testify, present witnesses or present evidence, to which the jurors replied affirmatively that they could follow and apply these instructions.  S.A. 426-28; 433-436; 449-51; 499-501.

Only if the factual determination is objectively unreasonable given the evidence in the proceeding will the decision be overturned; however, in this case, the factual determinations that the state court made were not objectively unreasonable.  Miller-El, 537 U.S. at 340.  As the Appeals Court explained "[i]t is clear from the record that the judge's decision was based on his first-hand assessment of the jurors' response, including his assessment of the jurors' sincerity and credibility – matters not open to our review."  Crichlow, 2018 WL 4840481, at *4.  A petitioner cannot try to

"refute the [Appeals Court's] factual determinations by employing the same documents already considered by the state courts [and by] [d]escribing how different parties stated different versions of events," as that does not "constitute the needed showing of clear and convincing evidence." Teti v. Bender, 507 F.3d 50, 57–59 (1st Cir. 2007).   In disputing the state court's factual determinations by referencing earlier facts that the trial court already considered, Crichlow urges this Court to reconsider the "state trial judge's implicit credibility determinations, adopted by the [Appeals Court]," however, these credibility determinations "are exactly the type of factual determinations to which we defer" to the state courts.  Id.

Accordingly, Ground IV fails.

## V.    Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES the Petition, D. 1.

A petitioner may receive a certificate of appealability only if he has "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a showing is made when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Based upon its analysis of the record and the applicable law, this Court does not, at this time, conclude that "reasonable jurists" could debate this Court's conclusion.  Id.  Although the Court is not inclined to issue a certificate of appealability at this time, the Court will give Crichlow until December 3, 2021, to file a motion for certificate of appealability addressing whether he seeks a certificate of appealability as to any of the grounds in the Petition and making the showing that such is warranted here.

So Ordered.

/s/ Denise J. Casper
United States District Judge

18